Karen S. Jennemann, United States Bankruptcy Judge
A creditor, DBI-ASG Coinvestor Fund II, LLC, by FCI Lender Services Inc. ("DBI"), claims the Debtor owes it $ 324,664.89 under a home equity loan.[1] Debtor, acknowledges liability of $ 50,000 to DBI, but otherwise objects[2] and challenges the validity of the underlying loan documents and the amount of DBI's claim. After giving DBI months to prepare and a full trial,[3] DBI failed to meet its burden of proof. The Court will partially sustain the *769 Debtor's Objection and allow Claim 6-2 for $ 50,000.
Parties bear shifting burdens of proof in asserting and challenging a bankruptcy claim. Section 502 of the Bankruptcy Code[4] states a proof of claim is presumed valid until an interested party objects. Once an objection is filed, the burden of proof shifts to the objecting party, usually a debtor or a trustee, to rebut the prima facie validity of the claim.[5] So what constitutes a prima facie claim?
A proof of claim filed under the bankruptcy rules "shall constitute prima facie evidence of the validity and amount of the claim."[6] Bankruptcy Rule 3001(c) specifies that when a claim is based on a writing, like the home equity loan at issue, a creditor must attach the original or a duplicate of the underlying writing and other supporting documentation, such as "invoices, itemized statements of running accounts, contracts."[7]
The rules rightfully require creditors to attach minimal supporting documentation for their claims so a debtor can evaluate their validity without discovery or extraordinary expense.[8] Bankruptcy Rule 3001(c) provides a debtor with "fair notice of the conduct, transaction, and occurrences that form the basis of the claim."[9] Attaching supporting documentation is a mandatory prerequisite to establishing a claim's prima facie validity.[10]
Here, DBI's Claim 6-2 meets the test for a valid prima facie claim. DBI used the official claim form and attached the Loan Payment History, Home Equity Line of Credit Agreement and Disclosure Statement, Mortgage, and two Modification Agreements encumbering the Debtor's home at 420 West Welch Road, Apopka, Florida. DBI does not have the original promissory note as reflected by the Affidavit as to Lost or Misplaced Original Note.[11]
The claim attachments also establish DBI is not the original lender. Apparently, J.P. Morgan Chase Bank, N.A., the original lender, assigned the note to Roundpoint Mortgage Servicing Corporation. Roundpoint then assigned the claim to DBI, under an undated Allonge indicating the loan amount was $ 50,000 from a note dated February 27, 2006, and a Florida Assignment of Mortgage.[12] Other intermediary entities also may exist in the chain of ownership for this loan. ClearSpring Loan Services, Inc., is the current servicer acting on behalf of DBI.[13]
Debtor objects to DBI's prima facially valid claim. She agrees that she owes $ 50,000[14] on the home equity loan, *770 made substantial payments for many years, and received no monies under the two later modification agreements that, if valid, increased her liability to $ 250,000. By making this objection to DBI's claim, the Debtor must refute the legal sufficiency of the claim. As a sister court notes, the burden shifts to the objecting party to make a good argument why the claim should not be allowed as filed:
[T]he objecting party [must]...produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents ... in which evidence is presented to bring the validity of the claim into question. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.[15]
Debtor has amply refuted DBI's claim noting internal inconsistencies in DBI's filings. Debtor also filed an Affidavit[16] that states she never had access to any amounts greater than the $ 50,000 because the lender at the time suspended the account before she could make additional withdrawals. Debtor also contends that she made payments on the $ 50,000, and that her balance due to DBI is "approximately $ 30,000."
Debtor has adequately challenged the legal sufficiency of DBI's claim to shift the burden of proof back to DBI to prove its own claim. On June 19, 2018, the Court set a trial three months later to give DBI this opportunity.[17] After spending considerable time sifting through the parties' testimony and submitted exhibits, I conclude that DBI has failed to meet its burden of proof. Let me explain my reasoning.
Debtor executed the original note and mortgage on February 27, 2006.[18] Both the mortgage and line of credit agreement referenced a $ 50,000 credit limit.[19] Debtor *771 acknowledges she likely received approximately $ 50,000 under this line of credit.[20]
Two later mortgage modification agreements were admitted into evidence.[21] The first Modification Agreement was dated March 7, 2007, and it allegedly increased the credit limit to $ 186,000.[22] The second Modification Agreement was dated August 15, 2007, and it allegedly further increased the credit limit to $ 250,000.[23] Debtor testified she recognized the Modification Agreements and that she signed the Agreements, however, she testified also she did not receive advances beyond the initial $ 50,000.[24] The Court finds the Debtor's testimony credible.
Debtor admits asking for further advances under the line of credit agreement, but Chase refused.[25] Again, the Court finds the Debtor's testimony credible. Corroborating evidence is supplied by a letter from Chase establishing that further advances were suspended under the line of credit as of January 21, 2009, due to "[d]elinquent [p]ast or [p]resent [c]redit [o]bligations with [o]thers."[26]
DBI has no actual knowledge whether Chased advanced more than $ 50,000 because they received the assigned loan in 2014, years after these events occurred. DBI's representative, Mr. Puchferran, testified that DBI was relying entirely on the documents it received during the loan transfer and then reconstructed the loan history to show the Debtor received advances of more than $ 50,000.[27] But that reconstruction (and Mr. Puchferran's testimony) lacks credibility and consistency.
DBI filed three contradictory loan history reconstructions. First, DBI filed a payment history in response to the Debtor's Objection to DBI's Claim.[28] This document is replete with unexplained acronyms, of an unknown origin, and contradicts other accountings filed by DBI. Second, DBI attached a revised and very incomplete payment history to its original proof of claim[29] starting with a date of February 20, 2009, long after all possible advances already had occurred. This attachment is of little or no probative value. Third, DBI attached yet another version of a payment history to its amended Claim 6-2, which contradicts the other versions and was largely unexplained by DBI. For example, there is an entry on March 12, 2007, described as "Cmplt Lck Bal" that perhaps increased the principal balance from $ 59,491.82 to $ 112,200. But DBI never attempted to expound on the meaning of this entry. There are other lines in the payment history that the Court cannot decipher. The Court, after making a diligent effort, could not interpret DBI's contradictory payment histories with sufficient accuracy or confidence to conclude the Debtor owes DBI over $ 324,000.
Nor did DBI attempt to reconcile inconsistencies between the three versions of its *772 payment histories or the Debtor's testimony. Rather, DBI relies on three monthly statements allegedly issued by Chase for these periods: June 21-July 21, 2007; December 22, 2007-January 21, 2008; and December 22, 2008-January 21, 2009.[30] The total advances reflected on these three statements totals $ 16,146.98. No further credible documentation, other than the Debtor's concession she borrowed $ 50,000, support any additional advances made by Chase to the Debtor. DBI has failed to prove the amounts advanced under the line of credit to the Debtor, other than the $ 50,000 she admits.
DBI also has failed to prove payments received from the Debtor. DBI relies on only three of likely dozens of monthly statements generated by Chase during its many years administering this loan. And, even with this small sample, errors are apparent. The three monthly statements from Chase introduced into evidence show payments from the Debtor to Chase totaling $ 5,500. One payment for $ 2,500 was made by the Debtor to Chase on January 18, 2008. This payment is reflected nowhere in DBI's reconstructed payment histories. At trial, DBI conceded it would give the Debtor credit for this payment. The problem is that I cannot tell how many other payments DBI missed.
In comparing the payment history filed in response to the Debtor's Objection[31] and the loan history attached to DBI's Claim 6-2, numerous omissions are present. For example:
• The Notice of Filing identifies two payments on Page 5, one for $ 2,849.32 on November 7, 2008, and one for $ 2,496.22 on December 19, 2008. These payments are not identified in the payment history attached to the amended claim.
• The Notice of Filing identifies a payment on Page 8 for $ 2,500 on August 21, 2008. This payment is not identified in the payment history attached to the amended claim.
• The Notice of Filing identifies two payments on Page 18, one for $ 2,022.21 on November 21, 2007, and another one for $ 500 on November 21, 2007. The first one is identified in the payment history attached to the amended claim, but the second one is not.
The Court found other errors in DBI's reconstructed payment history and now finds it has no probative value. So, in conclusion, DBI simply has failed to prove its claim. DBI does not explain these inconsistencies, other than to note that the three Chase statements reflect a loan balance higher than that conceded by the Debtor. This is not enough. DBI has failed to meet its burden to prove the amount due.
The trial was set months in advance-DBI had the opportunity to gather the evidence it needed to prove its claim (including verifying that its reconstructed record was accurate) and find representatives that could testify on the specifics of the payment history. DBI has not proved its case.[32]
Debtor agreed she borrowed up to $ 50,000, and the Court finds DBI has a secured claim in that amount on the date *773 this bankruptcy case was filed.[33] The Court knows the Debtor may receive a windfall from this ruling, if she actually received advances of $ 250,000 from Chase. DBI, however, had a fair chance and was in the best position to prove this larger liability and simply failed.
Accordingly, it is
ORDERED:
1. Debtor's Objection to Claim is PARTIALLY SUSTAINED.
2. DBI has a $ 50,000 secured claim as of October 23, 2017.

Claim 6-2.

Doc. No. 28. DBI responded in opposition and filed a payment history in support of its response. Doc. Nos. 29, 40.

The trial was held on September 17, 2018.

All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 et. seq.

In re Eddy , 572 B.R. 774, 778-79 (Bankr. M.D. Fla. 2017).

In re Winn-Dixie Stores, Inc. , 418 B.R. 475, 476 (Bankr. M.D. Fla. 2009) (internal quotation marks omitted).

In re Taylor , 363 B.R. 303, 307 (Bankr. M.D. Fla. 2007).

Id. at 308.

In re Sandifer , 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004).

In re Taylor , 363 B.R. at 308.

DBI Exh. 2, pp. 23-26.

Id. at pp. 34-36.

Id. at pp. 23-26.

In her Schedule D, Debtor agreed she had borrowed $ 50,000 under the line of credit and still owes DBI $ 35,000, on the date this Chapter 13 case was filed on October 23, 2017. Debtor also agrees that DBI has a secured claim for its repayment arising from a mortgage encumbering her home. (Doc. No. 1, pg. 18). The Court notes the Debtor has made numerous payments to DBI during this Chapter 13 case, and the Debtor's liability to DBI, whatever it is, accordingly now is reduced. Debtor also testified she paid off the first mortgage on her home in January 2018. Testimony 11:10-22. As such, DBI now holds a first priority mortgage lien on her home.

In re Armstrong , 320 B.R. 97, 103 (Bankr. N.D. Tex. 2005) (internal quotation marks omitted) (citations omitted); See also In re Winn-Dixie Stores, Inc. , 418 B.R. at 476 ("If the objecting party rebuts the prima facie validity of the proof of claim, the claimant bears the burden of persuasion to substantiate the validity and the amount of the claim by a preponderance of the evidence.").

Doc. No. 32. The affidavit was filed on June 12, 2018, in support of the Debtor's Objection to DBI's Claim. Later, DBI sought summary judgment that was denied because material factual disputes precluded summary judgment as a matter of law. Doc. Nos. 49, 50, 58.

The trial originally was scheduled for September 13, 2018. On July 24, 2018, the Court rescheduled the trial a few days later for September 17, 2018. Doc. No. 42. Debtor and a representative of DBI, Matthew Puchferran, testified at the trial. Doc. No. 57.

DBI Exh. 2, pp. 17-22, pp. 27-33. The original creditor was JPMorgan Chase Bank, N.A., who has since assigned its interest. DBI Exh. 2, pp. 34-36. See also Debtor Testimony 11:23-25, 12:1-9.

DBI Exh. 2, pp. 17-22, pp. 27-33.

Debtor Testimony 69:22-25 through 70:1-10, 72:7-15. In closing arguments, the Debtor's lawyer conceded a loan of $ 50,000.

DBI Exh. 2, pp. 11-16.

Id. at pp. 11-13.

Id. at pp. 14-16. The Court will collectively refer to these modification agreements documents as the Modification Agreements or the Agreements.

Debtor Testimony 15:12-25 through 18:1-25.

Debtor Testimony 12:18-25, 13:1-6.

DBI Exh. 5.

DBI Exh. 2; DBI Representative Testimony 40:19-25 through 41:1-24, 49:9-25 - 51:1-25.

Doc. No. 40.

Proof of Claim 6-1.

DBI Exhs. 6, 7, and 8.

Doc. No. 40.

As an aside, the Court rejects the Debtor's argument that the modification agreements do not run with the mortgage. The assignment of mortgage identifies that it assigns all "right, title and interest in and to said Mortgage," this language is sufficient to assign the modification agreements. DBI Exh. 2, p. 36.

Neither the Debtor or DBI proved the amount of payments, late fees, interest or other increases or deductions to this principal liability of $ 50,000. Debtor says she owes between $ 30,000 - $ 35,000, but she fails to account for interest or late charges accruing since 2009, which the Court assumes is substantial. In an attempt to bring finality to this mess, I will assess the debt at $ 50,000, the full principle amount borrowed, as the amount due and let the Chapter 13 Trustee calculate interest and payments going forward from the petition date.